**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM TRADER, on behalf of themselves and all others similarly situated, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | )   Case No.. 1:20-CV-3248 |
| vs. | ) |
| | ) |
| SEATGEEK, INC., a Delaware Corporation, | )   Honorable _____ |
| | ) |
| Defendant. | ) |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

1.       Plaintiff William Trader, by and through his counsel, files this Class Action Complaint against SeatGeek, Inc., on behalf of himself and on behalf of a class of similarly situated individuals, and alleges, upon personal knowledge as to his own actions, and upon investigation of counsel as to all other matters, as follows:

**NATURE OF THE ACTION**

2.       In the midst of the greatest public health and economic crisis in living memory, Defendant has sought to surreptitiously shift its losses onto its innocent customers, furthering the financial hardship endured by people across the country.

3.       On Defendant's Website, sellers list tickets for sale to events such as sporting contests, theater shows, concerts, and music festivals, among others. Buyers can find these listed tickets and purchase them directly though the Website. Defendant charges substantial fees to both the buyers and sellers for its services.

4.       Plaintiff brings this action on behalf of himself and a class of similarly situated individuals who were deprived of the benefit of Defendant's longstanding SeatGeek Buyer

1

Guarantee when, in response to apparent liabilities it would incur stemming from the COVID-19 pandemic, Defendant sought to retroactively discontinue the essential function of the SeatGeek Buyer Guarantee a full cash refund.

5.      Defendant has quietly sought to force its buyers to endure the financial losses that its own guarantee created for it in the entirely foreseeable scenario that world occurrences would cause the simultaneous cancellation of numerous public events.

6.      Defendant's uniform conduct is equally applicable to Plaintiff and the Class. Plaintiff brings this class action against Defendant for: (1) breach of contract; (2) breach of implied contract; (3) violation of statutory consumer protection law; (4) conversion; (5) unjust enrichment; (6) negligent misrepresentation; and (7) breach of express warranty.  Plaintiff seeks an order requiring Defendant to, among other things: (1) reverse the unlawful retroactive changes it has sought to make to its refund policy as it relates to tickets purchased prior to the date when Defendant unilaterally discontinued its SeatGeek Buyer Guarantee; (2) prohibit Defendant from issuing credits in lieu of refunds to any Class member who has not requested such credits; and (3) pay damages and restitution to Plaintiff and Class members.

## <u>JURISDICTION AND VENUE</u>

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are numerous class members who are citizens of states different from Defendant.  The number of members of the proposed class is in the aggregate greater than 100 and more than two-thirds of the class members reside in states other than the states in which Defendant is a citizen.

8.      This Court has personal jurisdiction over Defendant because Defendants is a citizen of New York, conducts substantial business in New York, and a substantial portion of the acts complained of took place in New York.

9.      Venue is proper in the Southern District of New York because Defendant's headquarters are located in this District, Defendant conducts business in this District and many of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

10.      Plaintiff William Trader is an individual and a citizen of Illinois.

11.      Defendant SeatGeek, Inc. is a Delaware Corporation with its principal place of business in New York, at 400 Lafayette St., Floor 4, New York, NY 10003.

## FACTUAL ALLEGATIONS

12.      For years, in the process of building a marketplace in which consumers would be comfortable paying substantial prices, often beyond face-value, for event tickets from strangers on the internet, SeatGeek relied on the "SeatGeek Buyer Guarantee" to induce customers to make purchases, which was incorporated into various communications to consumers and heavily marketed to prospective customers.

13.      The longstanding SeatGeek Buyer Guarantee promised that if a SeatGeek buyer purchased tickets to any event through SeatGeek, and the event was cancelled and not rescheduled, the user would receive a full, money-back refund for their purchase.[1]

---

[1] https://web.archive.org/web/20190904084336/https://seatgeek.com/buyer-guarantee (last visited April 23, 2020).

14.     To avoid financial losses, and potential future losses, due to the Covid-19 crisis, Defendant has unilaterally and unconscionably changed their longstanding policy to instead leave their customers holding the bag.

### SeatGeek Online Ticket Marketplace

15.     SeatGeek is a secondary ticket marketplace that connects ticket sellers with buyers.

16.     SeatGeek requires all prospective sellers to create an account through its website and provide a valid credit card.  Sellers are paid directly into their bank account.

17.     Sellers provide certain ticket information, including list price, and can post the tickets for sale to the SeatGeek online marketplace, where buyers can view and purchase the tickets.

18.     SeatGeek charges both buyers and sellers a fee for all ticket transactions.  The seller fee is 10% of the listed sale price.

19.     Buyers are charged substantial fees typically in excess of 25% of the total ticket price.

20.     When buyers click "Place Order" to complete a transaction the SeatGeek Buyer's Guarantee is advertised prominently.

21.     Sellers are not required to create an account to make purchases, as they are invited to log in using Facebook or their email account.

22.     The vast majority of tickets are available to buyers through instant download and require no physical delivery.

23.     Many of SeatGeek's ticket sales use one or more intermediary ticket listing websites which the buyer never sees, but the essential transaction remains the same.

24.     A longstanding, obvious problem with SeatGeek's business model is the fact that it is enormously dependent on "ticket brokers," or professional scalpers who amass as many tickets as possible to popular events and then sell them on secondary markets like Defendants'.

25.     SeatGeek's model made numerous concessions in order to encourage ticket brokers to use its marketplace.

26.     Accordingly, it has engaged in the practice of paying ticket brokers upon sale, prior to the event for which the tickets are sold has occurred.

27.     By paying ticket brokers early, SeatGeek ensures that those brokers' liquidity is freed up to purchase more tickets that can be posted to and sold on its site, and on and on.  It is not unlikely that the same broker could be paid out numerous times for numerous tickets to events that had not yet occurred using the same funds.

28.     Under this business model, the brokers and SeatGeek both make more money than if SeatGeek were responsible and held onto the proceeds of the sale until the event occurred.

29.     The problem here is apparent. If SeatGeek has already paid the seller for the tickets, but the event has not occurred, it must keep a reserve of funds, or come up with the money on its own in the event that it needs to honor the SeatGeek Buyer Guarantee in the event of a cancellation. The more cancellations, the more SeatGeek needs to reserve or acquire.

30.     Astonishingly, SeatGeek either did not see the problem with this business model—or—more likely—it was too busy making money to care.

31.     Defendant's website contains Terms of Use that purport to require users to arbitrate certain claims against Defendants.

32.     Plaintiffs never viewed or assented to Defendants' Terms of Use.

33.     No person could reasonably be expected to view Defendant's Terms of Use based on the way Defendants' site is organized and displayed to buyers.

***The SeatGeek Buyer Guarantee***

34.     SeatGeek's online ticket marketplace is made possible by the promise, or perception, that it is a viable, protected medium through which buyers can obtain event tickets in a protected, low-risk environment.

35.     A key pillar of the Seat Geek marketplace's success is its Buyer Guarantee, which provides buyers with an assurance that they will not be left in the lurch in the case of an event cancellation.

36.     Until a very recent change, which quietly gutted the SeatGeek Buyer Guarantee, SeatGeek clearly promised that, "If the event is cancelled and not rescheduled, you will be refunded the full purchase price[.]"[2]

37.     This full refund promise for cancelled events has been SeatGeek's longstanding promise, and it intended its customers to rely on the promise when making purchases.

---

[2] https://web.archive.org/web/20190904084336/https://seatgeek.com/buyer-guarantee (last visited April 23, 2020).

6

38.     The SeatGeek Buyer Guarantee was heavily advertised, and features prominently on the Website.  Once a prospective buyer clicks on a ticket option, the SeatGeek Buyer Guarantee remains fixed and visible during the entirety of the SeatGeek shopping and purchasing process.[3]



---

[3] The three sample screenshots were taken sequentially from the SeatGeek website on April 23, 2020.



39.     SeatGeek intends for its customers to rely on the SeatGeek Buyer Guarantee when making purchases, as it knows that much cheaper tickets are available directly to its customers through other mediums, including cash sales outside of venues and direct buyer to seller marketplaces.

40.     Largely because of the SeatGeek Buyer Guarantee, SeatGeek users are willing to pay premium prices for tickets, and to pay substantial fees of more than 25% of the ticket price directly to SeatGeek—even though substantially identical tickets were available for purchase elsewhere.

41.     A major component of SeatGeek's value, and viability as a company, is that purchases are secure and refunds are available for cancelled events.  Such a benefit is not available to buyers who make purchases directly from other available resellers, through other indirect online market sites such as craigslist.com or Facebook Marketplace, where there is no intermediary exercising authority and control over the exchange—and where tickets can be purchased without substantial fees and markups.

*SeatGeek's Shameful Response to the Covid-19 Crisis*

42.    By March 2020, it became apparent that the United States was about to be hit hard by the Covid-19 virus.  This impending crisis inspired fear and trepidation among consumers who were increasingly unwilling to venture into public or attend public gatherings.  Accordingly, confidence in making event ticket purchases among Vivid Seats' customers was rapidly deteriorating.

43.    On March 12, 2020, SeatGeek updated its website to ensure customers that the SeatGeek Buyer Guarantee remained in full force and would be honored.

44.    SeatGeek used its Twitter account to communicate to buyers and prospective buyers that the company would continue to honor its longstanding Buyer Guarantee:



45.    The link on SeatGeek's March 12 Tweet directed buyers and prospective buyers to its website, where the company, through its designated Covid-10 Update page, promised "If an event is canceled, you will be protected by SeatGeek's Buyer Guarantee. For eligible orders, you

will receive an email with details about your options for a refund. If you do not make a choice in this email, you will automatically receive a refund in **as soon as 30 days**. There is no need to reach out to our customer experience team in this case, our team will reach out to you as soon as we can."[4] (Emphasis in original).

46.    SeatGeek's March Covid-19 update was an open invitation for consumers to put full faith and trust in the company's longstanding commitment to the SeatGeek Buyer Guarantee, and the company encouraged its customers to rely on the policy, despite ongoing and developing world events that it knew threatened to substantially undermine ticket sales and increased the likelihood that many more events would very soon be cancelled.

47.    Quietly, and without delivering any corresponding communication to all customers, SeatGeek reversed course from its prior assurances and suddenly discontinued its longstanding Buyer Guarantee.

48.    SeatGeek began refusing to honor its widely disseminated and relied upon Buyer Guarantee and instead forced buyers to accept only future credits on its site.

49.    SeetGeek underhandedly changed its Buyer Guarantee promise retroactively from "[i]f the event is cancelled and not rescheduled, you will be refunded the full purchase price"[5] to "[i]f the event is cancelled and not rescheduled, you will be refunded the full purchase price ***or issued a credit to be used for a future purchase to be determined in SeatGeek's sole discretion***. We will notify you that the event was cancelled and provide instructions on how to obtain the refund or credit."[6] (Emphasis added).

---

[4] https://web.archive.org/web/20200409232712/https://support.seatgeek.com/hc/en-us/articles/360044526473-Updates-about-COVID-19-Coronavirus (last visited April 23 2020).

[5] https://web.archive.org/web/20190904084336/https://seatgeek.com/buyer-guarantee (last visited April 23, 2020).

[6] https://seatgeek.com/buyer-guarantee (last visited April 23, 2020).

50.     SeatGeek has collected, and continues to collect, funds, including fees, from Plaintiffs and the putative class for cancelled or constructively cancelled events.

51.     Even though many thousands of events have been cancelled, SeatGeek wrongly refuses to classify the events as "cancelled," allowing it to maintain dominion and control over additional funds to which it has no legal right to possess and use for its own business purposes.

52.     Plaintiffs and other members of the putative class were under no obligation to request a refund from SeatGeek, as the Buyer Guarantee and Covid-19 Update specifically stated that no action was required on their part and they were entitled to a full refund within 30 days.

53.     The prior version of the SeatGeek Buyer Guarantee terms on its website contained no language stating or implying that customers were entitled to only a "credit" for use on a future purchase or that credits would be provided at SeatGeeks "sole discretion." The terms of the prior Buyer Guarantee clearly provided only for a full refund.

54.     Despite the fact that Plaintiff and the Class made purchases while the Buyer Guarantee was promised and in full force, SeatGeek immediately refused to honor the existing promise, shifting the burden of its corporate losses and potential future losses onto many thousands of its loyal customers.

*Plaintiffs' Use of SeatGeek*

55.     On or about February 26, 2020, Plaintiff William Trader used Defendant's Website to purchase two tickets to the "Dead and Company" concert scheduled for July 24 or 25, 2020 at Wrigley Field in Chicago, Illinois, at a purchase price of $114.12.

56.     The event was cancelled.

57.     When Plaintiff purchased the event tickets through Defendant, his purchase was subject to the Seatgeek Buyer Guarantee.

11

58.     Plaintiff's event was cancelled, and Defendant has utterly failed to honor its guarantee.

59.     Defendant has not provided Plaintiff with a refund.

60.     Plaintiff has contacted Defendant specifically to obtain a refund, and was told by Defendant's customer service agent(s) that his ability to obtain a refund would be contingent on Defendant's ability to recapture funds from another entity.

61.     Plaintiff does not want a credit, he wants his money back under the terms of the guarantee that Defendant promised.

## **CLASS ALLEGATIONS**

62.     Plaintiff brings this class action under Federal Rule of Civil Procedure 23 and seeks certification of the claims and issues in this action pursuant to the applicable provisions of Rule 23. The proposed class is defined as:

> All persons residing in the United States or its territories who used SeatGeek to purchase tickets to any event which was subsequently canceled or constructively canceled at any point from when the company ceased honoring the SeatGeek Buyer Guarantee until the date that notice of this class action is disseminated to the Class, and to whom Defendant has not provided a full refund, including all fees. Excluded from the Class are (a) any person who has specifically requested a credit in lieu of a refund; (b) all persons who are employees, directors, officers, and agents of Defendant; (c) governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

63.     Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

64.     Numerosity. Fed. R. Civ. P. 23(a)(1). More than 50,000 events in the United States have been cancelled, postponed, or rescheduled, and SeatGeek facilitates ticket sales to the vast majority of events in the United States to its millions of users. At a minimum, there are tens of

thousands of Class Members but very likely many more. The exact size of the proposed class and the identity of all class members can be readily ascertained from Defendant's records.

65.     Commonality.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  Common issues include but are not limited to:

        a.      Whether there was a contract or implied contract between Plaintiff and Defendant, and, if so, what provisions if any apply to Plaintiff's claims;

        b.      Whether or the extent to which Defendant's statements and representations regarding the SeatGeek Buyer Guarantee are or constituted misrepresentations'

        c.      Whether Defendant's failure to issue promised refunds constitutes a breach of contract, breach of implied contract, conversion, and/or unjust enrichment;

        d.      Whether Defendant knew or should have known that in the event of widespread event cancellations it would be unable to honor its Buyer Guarantee;

        e.      Whether Defendant's conduct is deceptive in violation of consumer protection law;

        f.      The nature of the relief, including equitable relief, to which Plaintiffs and the class are entitled.

66.      Typicality.  Fed. R. Civ. P. 23(a)(3).  Plaintiff's claims are typical of the claims of the Class he seeks to represent.  Plaintiff and all Class members were exposed to uniform practices and sustained injuries arising out of and caused by Defendant's unlawful conduct.

67.     Adequacy of Representation.  Fed. R. Civ. P. 23(a)(4).  Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Further, Plaintiff's counsel is competent and experienced in litigating class actions.

68.     Superiority.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to any other available means for the fair and efficient adjudication of this controversy.  The claims of Plaintiff and individual class members are small compared to the burden and expense that would be required to separately litigate their claims against Defendant, and it would be impracticable for class members to seek redress individually.  Litigating claims individually would also be wasteful to the resources of the parties and the judicial system and create the possibility of inconsistent or contradictory judgments.  Class treatment provides manageable judicial treatment which will bring an orderly and efficient conclusion to all claims arising from Defendant's misconduct.  Class certification is therefore appropriate under Rule 23(b)(3).

69.     Class certification is also appropriate under Rule 23(b)(1), as the prosecution of separate actions by individual members of the class would create the risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and substantially impair their ability to protect those interests.

70.     Class certification is also appropriate under Rule 23(b)(2), as Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the class.

## FIRST CAUSE OF ACTION

### Breach of Contract

71.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

72.     A contract was formed between Plaintiff and Class members on the one hand and Defendant on the other with respect to purchases made on Defendant's Website.

73.    The contract was offered by Defendant and formed at the time Plaintiffs and the Class accepted it by making ticket purchase(s).

74.    The contract that governs the transactions at issue in this case includes the SeatGeek Buyer Guarantee that was operative at the time of purchase.

75.    Plaintiffs and the Class performed their obligations under the contract by purchasing ticket(s) and rendering payment.

76.    The tickets purchased through Defendant's business became unusable and without value due to a cancellation or constructive cancellation.

77.    Defendant breached the contract when it collected Plaintiff's funds but ceased providing full cash refunds, including fees, to cancelled or constructively cancelled events as required under its guarantee and Defendant's clear promises to provide such refunds.

78.    Defendant's breaches were knowing and willful and not the result of mistake or inadvertence.

79.    As a result of Defendant's breach of the SeatGeek Buyer Guarantee, Plaintiffs =and other Class members have been damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**Breach of Implied Contract**

80.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

81.    An implied contract was formed between Plaintiff and Defendant that included a promise to honor the SeatGeek Buyer Guarantee when Plaintiff made purchases of event tickets through Defendant's website, including a promise to fully refund tickets in the event of a cancelled event.

82.     Such implied agreement can be presumed from the acts of Plaintiff and Defendant because both parties manifested assent under circumstances that evinced a mutual intent to contract.

83.     Defendant offered Plaintiff and other Class Members tickets and a promise to guarantee a full cash refund, including all fees paid, in the event of an event cancellation or constructive cancellation in exchange for payment from Plaintiffs.

84.     Defendant's promise to provide a full refund in the event of a cancellation is demonstrated by Defendant's statements and the prominent, fixed display of the SeatGeek Buyer Guarantee throughout the transaction process provided through its website.

85.     Plaintiff accepted Defendant's offer, including for the SeatGeek Buyer Guarantee, by purchasing tickets from Defendant and remitted payment to Defendant.

86.     Plaintiff paid good consideration to Defendant in exchange for the event tickets, which were fully backed by Defendant's widely disseminated SeatGeek Buyer Guarantee.

87.     Plaintiff fully performed on his obligations under the bargain.

88.     Defendant breached the contract by receiving and retaining Plaintiff's payment but refusing to honor the SeatGeek Buyer Guarantee with a full refund of all payments made, including fees.

89.     As a result of Defendant's conduct, Plaintiff and other Class Members have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Conversion

90.     Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

91.     From the moment of event cancellation or constructive cancellation, Plaintiff and the Class owned and held a possessory right in the funds previously remitted to Defendant for event ticket(s).

92.     Defendant exercised continuing dominion and control over Plaintiff's property and interfered with his rights to the property after the events for which the tickets were purchased were cancelled or constructively cancelled and Defendant maintained no rights to the property.

93.     Defendant intentionally and without authority assumed authority and control over Plaintiff's property well after Defendant knew it maintained no right to possess the property, following cancellation of the events for which the tickets were purchased.

94.     Plaintiff did not consent to Defendant's continued possession of his rightful property after the events were cancelled.

95.     Defendant intentionally and substantially interfered with property belonging to Plaintiff and the Class by taking possession of it, refusing to refund it to Plaintiff, preventing Plaintiff and the Class from having access to it, and/or refusing to return it to Plaintiff, even after demands were made for return of Plaintiff's rightful property.

96.     Defendant's exercise of dominion and control over Plaintiff's property was knowing and wrongful.

97.     Plaintiff and the Class were harmed by Defendant's conduct.

98.     The conduct of Defendant was a substantial factor in causing this harm to Plaintiff and the Class.

99.     As a result of Defendant's conduct, Plaintiff and other Class members have been damaged in an amount to be determined at trial.

## **FOURTH CAUSE OF ACTION**

**Unjust Enrichment**

100.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

101.    By taking and retaining possession and control of funds paid by Plaintiff for tickets to events that were cancelled or constructively cancelled, Defendant was enriched at Plaintiff's expense.

102.    Under the circumstances, it is against equity and good conscience to permit to Defendant to retain the funds Plaintiff originally remitted for events that did not occur.

103.    Defendant's enrichment was unjustified and wrongful, as the retention of funds continued after the event was cancelled, and it had no right to retain such funds and use them for its own benefit at the expense of Plaintiff, who Defendant knows received no benefit from the purchase.

104.    Defendant nevertheless retained Plaintiff's funds anyway and diverted them for its own purposes, unfairly without adequate justification.

105.    Defendant obtained and possessed value from Plaintiff and the Class that rightly belonged to them following the cancellation or constructive cancellation of the events for which the tickets were purchased.

106.    Defendant's actions in retaining Plaintiffs' funds following the cancellation of the events for which the tickets were sold violate fundamental principles of justice, equity, and good conscience.

107.    As a result of Defendant's wrongful conduct, Plaintiff and other Class Members have suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**Negligent Misrepresentation**

108.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

109.    There was a special, privity-like relationship between Plaintiff and Defendant, as buyer and seller.

110.    Defendant had a duty to impart correct information on Plaintiff and the Class as buyers of their tickets.

111.    Defendant falsely represented material facts regarding its SeatGeek Buyer Guarantee to Plaintiff and the Class, including well after it became obvious, and Defendant knew, that Covid-19 was causing, and would likely continue to cause, widespread event closures of events to which Defendant sold tickets.

112.    Defendant was negligent in making false statements of material facts to its customers, including Plaintiff and the Class, regarding its Buyer Guarantee.

113.    Defendant intended to induce Plaintiffs and the Class to act by purchasing tickets with peace-of-mind that they would receive a full refund pursuant to the SeatGeek Buyer Guarantee if the event to which they purchased tickets were cancelled.

114.    Plaintiff and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the longstanding SeatGeek Buyer Guarantee, which was featured prominently on its website and at every stage of the transaction process.

115.    As a result of Defendant's conduct, Plaintiff and other Class Members suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Unfair Business Practices - Violation of NY CLS Gen Bus § 349

116.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

117.    Defendant explicitly and implicitly represented to Plaintiff and the Class that it would provide a full refund to them as buyers if an event for which it sold tickets was cancelled and not rescheduled.

118.    Defendant explicitly and implicitly represented to Plaintiff and the Class that it would continue to honor its longstanding SeatGeek Buyer Guarantee, before, during, and after the Covid-19 crisis, seeking to induce buyers and prospective buyers to continue making ticket purchases despite serious and reasonable concerns regarding the safety of public events.

119.    Defendant made materially misleading statements and omissions, which prevented Plaintiff and the Class from obtaining the promised full refunds.

120.    Defendant quietly changed its Buyer Guarantee in a materially misleading and unfair manner and has unilaterally and retroactively refused to provide full cash refunds for cancelled and constructively cancelled events, as previously promised thereunder.

121.    Defendant's acts and omissions caused grossly excessive payments to be made for tickets to event(s) that never took place, and Defendant knowingly and wrongfully retained the funds and refused provide refunds following the widespread, and predictable, event cancellations.

122.    Defendant solicited such payments, and received such payments, directly from consumers, including Plaintiff and the Class.

123.    Defendant's acts and practices in offering ticket sales and receiving monetary payments in exchange were consumer oriented.

124.    Defendant's acts, practices, and omissions in assuring and reassuring customers regarding the effect of its Buyer Guarantee, then changing its policies to universally retain monetary payments it seized from consumers under the SeatGeek Buyer Guarantee was misleading in a material respect.

125.    Plaintiff and the Class suffered, and continue to suffer, substantial monetary damages a result of Defendants' unfair business practices.

126.    Defendant knowingly and willfully violated this section by collecting and retaining payments from consumers for tickets to cancelled events, despite its Buyer Guarantee, which was in effect at the time of most ticket purchases for which the funds were retained.

127.    Each Plaintiff and each class member are entitled to actual damages or $50, whichever is greater, as a result of Defendant's unfair business practices.

128.    Because Defendant's violations were knowing and willful, Plaintiff and each class member are entitled to treble damages up to $1,000.

129.    Plaintiff is entitled to reasonable attorneys' fees as a result of Defendant's unfair business practices.

130.    Plaintiff seeks the maximum amount of damages available by law for Defendant's unlawful conduct.

**SEVENTH CAUSE OF ACTION**

**Breach of Express Warranty**

131.    Plaintiff incorporates all preceding factual allegations as if fully set forth herein.

132.    The tickets Plaintiff and the Class purchased constitute goods.

133.    Defendant is a merchant.

134.    Defendant created express warranties to Plaintiff and the Class through the issuance and advertising of the SeatGeek Buyer Guarantee, including on its website, and at every step in the transaction process.

135.    At the time of purchase, Defendant described the tickets that it sold as being covered by a "Guarantee" of a refund in the event of cancellation, the "SeatGeek Buyer

Guarantee," and that description was part of the basis of the bargain when Plaintiff and the Class purchased their tickets from Defendant.

136.    The tickets were not covered by a guarantee of a refund when the events were cancelled.

137.    Plaintiff and the Class acted with reasonable reliance as to the truth of Defendant's misrepresentations regarding the SeatGeek Buyer Guarantee, and were harmed as a result.

138.    As a result of Defendants' conduct, Plaintiff and other Class Members suffered damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the classes of similarly situated individuals, requests the Court to:

(a)    Certify the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designate Plaintiffs as representative of the class(es) and designate counsel of record as class counsel;

(b)    Order Defendants to provide actual damages and equitable monetary relief (including restitution) to Plaintiffs and class members and/or order Defendants to disgorge profits they realized as a result of their unlawful conduct;

(c)    Order Defendants to pay punitive damages, as allowable by law, to Plaintiffs and class members;

(d)    Order Defendants to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and class members;

(e)    Declare Defendants conduct unlawful and enter an order enjoining Defendants from continuing to engage in the conduct alleged herein;

(f)    For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

(g)     For costs of the proceedings herein;

(h)     For reasonable attorneys' fees as allowed by statute; and

(i)     Award such other relief as the Court deems appropriate under the circumstances.

## JURY DEMAND

Plaintiffs demand a jury on issues so triable.

DATED:  April 24, 2020                          Respectfully submitted,

**LIDDLE & DUBIN, P.C.**

s/ Nicholas A. Coulson

Steven D. Liddle (PHV Forthcoming)
sliddle@ldclassaction.com
Nicholas A. Coulson (PHV Forthcoming)
ncoulson@ldclassaction.com
975 E. Jefferson Avenue
Detroit, Michigan 48207

Tel: 313-392-0015
Fax: 313-392-0025

*Attorneys for Plaintiffs and the Putative Class*